## Dumanski, Appellant, *v.* City of Erie.

Argued September 27, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*William W. Knox,* with him *Robert J. Firman,* for appellant.

*Edward M. Murphy,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE PATTERSON, November 22, 1943:

In this action in trespass Anastasia Dumanski, appellant, trustee ad litem for herself, seeks to hold the City of Erie, appellee, liable for the death of her minor son who died as the result of injuries sustained when a pile of frozen ashes or cinders collapsed, burying him. At the conclusion of appellant's case the trial judge granted the City's motion for a compulsory non-suit

which the court en banc refused to take off for the reason that there had been no breach of duty. This appeal followed.

On March 21, 1941, about 4:30 p.m., Joseph Dumanski, fourteen years and four months of age, and Chester, his brother, twelve years of age, left their home at 1136 Atkin Street, in the City of Erie, to take refuse to the city dump located in the vicinity of Third and Newman Streets. Private concerns were not permitted to use the dump; no objection was made, however, to use by individuals. No regular roadway through this city property existed, only a path made by the city trucks going and coming from the dump. The boys used a small wagon to haul boxes containing the refuse. After having disposed of the waste they filled the boxes with coal gathered from ashes deposited on the dump. A large cinder pile was located on this property. City employees had removed several loads of cinders from the pile on the day in question in such manner that there remained a frozen mass of cinders eight to twelve feet long and twelve to fourteen inches thick, projecting four or five feet from the top of the pile, creating a cave. The only definitive evidence with regard to the proximity of the road to the cinder pile is that it was at least fifty feet away. Instead of going directly home, the boys left their wagon at the edge of the pile and proceeded to enter this cave. After having entered half way, they turned around to leave when the frozen cinders collapsed, burying both boys. They were found about 11:00 p.m. that evening; Joseph was dead and Chester was unconscious but recovered.

Appellant contends that the City, having failed to prevent the use of the roadway to individuals bringing their refuse to the dump, impliedly permitted its use; that deceased at the time of the accident had the status of a licensee; and, that the City breached its duty to the deceased in permitting the projecting mass of frozen cinders to exist as heretofore stated. We are of opinion

that the City has breached no duty to appellant's decedent.

The roadway was used by all private individuals who brought their refuse to the dump, children being the most frequent users. This use continued with the knowledge of the agents of the City for a sufficient length of time to give to one using it the status of a licensee. The entrance upon and use of the City premises, however, was solely for the benefit of licensees. No benefit accrued to the City and decedent, therefore, was at most a gratuitous licensee with regard to the use of the roadway: *Onstott v. Allegheny County*, 338 Pa. 206, 209; *DiMarco v. Penna. R. R. Co.*, 321 Pa. 568, 571; *Schiffer v. Sauer Co.*, 238 Pa. 550, 554.

The existence of a duty in any given situation is predicated on a relationship existing at the time in question. The quantum of due care required of a possessor of land to one upon his property is determined by an examination of existing facts and circumstances. "One who is invited or permitted to enter a particular part of the land becomes a trespasser if he enters another part of the land . . .": Restatement, Torts, section 341, comment (b). ". . . a license does not extend beyond the area to which the permission applies": *Prokop v. Becker*, 345 Pa. 607, 609. Here the license extended only to the use of the path for the purpose of taking refuse to the City dump. When the decedent extended his activities beyond the scope of the license and entered into the excavation fifty feet away his status as a gratuitous licensee no longer remained; he was now a trespasser. His presence being unknown to the City appellee, its only duty was to refrain from inflicting upon him any wilful or wanton injury: *Rahe v. Fidelity-Phila. Trust Co.*, 318 Pa. 376, 378. See *Frederick v. Phila. R. T. Co.*, 337 Pa. 136, 140. Had his presence been known to the City appellee or reasonably should have been known to it, ordinary and reasonable care to avoid injury would have been required: *Frederick v. Phila. R. T. Co.*, supra, 140. Clearly,

the City has breached no duty owed to the appellant's decedent. This is not an appropriate case for the application of either the playground rule or the attractive nuisance doctrine. Cf. *Rahe v. Fidelity-Phila. Trust Co.*, supra; *Thompson v. Reading Co.*, 343 Pa. 585. Cases cited by appellant in support of these propositions are, therefore, inapplicable.

Since there has been no breach of duty on the part of the City, it is unnecessary to determine whether the City was acting in a governmental or proprietary capacity or whether the decedent was guilty of contributory negligence.

Judgment affirmed.