Jack **KRAVETZ**, a Minor by Saul Kravetz, Parent and Natural Guardian, and Saul Kravetz, in His Own Right, Appellants,

v.

**B. PERINI & SONS, a Corporation.**

No. 12287.

United States Court of Appeals Third Circuit.

Argued Dec. 6, 1957.

Decided Feb. 11, 1958.

**906**

P. J. McArdle, Pittsburgh, Pa., for appellants.

Arthur M. Grossman, Pittsburgh, Pa. (Gary F. Sharlock, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from an Order of the United States District Court for the Western District of Pennsylvania granting defendant's motion for an involuntary dismissal of plaintiffs' action for damages.

The sole issue presented is whether sufficient evidence had been adduced by plaintiffs on the score of defendant's liability to warrant submission to the jury under applicable Pennsylvania law.

The facts as adduced by the plaintiffs' testimony may be summarized as follows:

Jack Kravetz, eight and one-half year old minor plaintiff, a normal boy of average intelligence, was injured on January 27, 1953 while taking a short-cut home from a friend's home through the unfinished Penn-Lincoln Parkway in Pittsburgh, Pennsylvania.

The section of the Parkway in question includes the Squirrel Hill Interchange with its maze of ramps and overpasses at the west entrance of the Squirrel Hill Tunnel. Plaintiffs' home is located on the perimeter of this complex of roadways on Beechwood Boulevard near Forward Avenue. Beechwood Boulevard is parallel to the new highway at this point and runs in an east-west direction. Forward Avenue passes beneath the Parkway and forms the stem of a T intersection with Beechwood. These streets provided the most direct route from the neighborhood schools and the Squirrel Hill business district to plaintiffs' home. The record also indicates that this route was the one customarily taken by the children in the area prior to the initiation of work on the Parkway.

Plaintiffs contend that defendant, the construction company in control of this portion of the project, destroyed all safe passages to and from the neighborhood schools and forced the children to seek more hazardous paths through the construction area. In this respect, there was testimony that the sidewalks on the west side of Forward Avenue and the north side of Beechwood Boulevard had been permanently eliminated; that the remaining sidewalks and roadways were torn up, muddy and heavily traveled during the course of construction; and that

as a result of these conditions the streets were rendered inconvenient and dangerous for young children.

Defendant, on the other hand, contends there was no clear testimony that Beechwood Boulevard or Forward Avenue were unsafe for pedestrian travel at the time of the accident. Plaintiffs introduced four reports of inspections made by O. D. Berry for the Bureau of Public Roads of the United States Department of Commerce which indicate that the major construction work had been completed several months prior to the mishap. Coupled with this evidence was the testimony of several of the neighborhood children which established at least three different routes through the project. Most of them presented no danger. Unfortunately the minor plaintiff chose a hazardous path.

He turned off Forward Avenue before he reached the Beechwood Boulevard intersection and followed a path along the ramp cutting diagonally through the project from Forward Avenue to Beechwood Boulevard. At a point along the ramp approximately 75 feet from Forward Avenue, the minor plaintiff mounted a retaining wall one and one-half feet wide and rising in height from four feet three inches to 25 feet three inches. He successfully traversed the entire length of the wall, about 475 feet, but was seriously injured when he fell a distance of 25 feet as he attempted to step onto the curbing of an overpass from a concrete crossbeam which intersects the retaining wall and crosses the roadway.

The law in Pennsylvania governing the liability of a possessor of land for in-juries suffered by trespassing children was first stated in Thompson v. Reading Railroad Co., 1942, 343 Pa. 585, 23 A.2d 729. It was there held that the rule embodied in Section 339 of the Restatement of Torts supplanted the older playground and attractive nuisance doctrines. This rule has been adopted in its entirety in Pennsylvania and has been consistently followed in numerous decisions.[1] To the extent that earlier cases conflict with § 339, they have been expressly overruled. Bartelson v. Glen Alden Coal Co., 1949, 361 Pa. 519, 64 A.2d 846.

Section 339 provides:

"A possessor of land is subject to the liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk involved to young children involved therein."

The record establishes that the minor plaintiff was a trespasser at the time of his injury[2] and that the defend-

---

1. Prokop v. Becker, 1942, 345 Pa. 607, 29 A.2d 23; Altenbach v. Lehigh Valley Railroad Co., 1944, 349 Pa. 272, 37 A.2d 429; Allen v. Silverman, 1947, 355 Pa. 471, 50 A.2d 275; Malischewski v. Pennsylvania Railroad Co., 1947, 356 Pa. 554, 52 A.2d 215; Mussolino v. Coxe Bros. Co., Inc., 1947, 357 Pa. 10, 53 A.2d 93; Patterson v. Palley Manufacturing Co., 1948, 360 Pa. 259, 61 A.2d 861; Bruce v. Pittsburgh Housing Authority, 1950, 365 Pa. 571, 76 A.2d 400; Gallagher v. Frederick, 1951, 366 Pa. 450, 77 A.2d 427; McGuire v. Carey, 1951, 366 Pa. 627, 79 A.2d 236; Verrichia v. Society Di M.S. Del Lazio, 1951, 366 Pa. 629, 79 A.2d 237; Jennings v. Glen Alden Coal Co., 1952, 369 Pa. 532, 87 A.2d 206; Rush v. Plains Township, 1952, 371 Pa. 117, 89 A.2d 200; Scibelli v. Pennsylvania Railroad Co., 1954, 379 Pa. 282, 108 A.2d 348.

2. McHugh v. Reading Co., 1943, 346 Pa. 266, 30 A.2d 122.

ant was a possessor of land within the meaning of the Restatement Rule.[3] Therefore, in order for plaintiffs to prevail, they must meet each of the four conditions enumerated above. Dugan v. Pennsylvania R. R. Co., 1956, 387 Pa. 25, 127 A.2d 343. We agree with the District Court that the evidence intended to satisfy conditions (c) and (d) was insufficient to warrant submitting the case to the jury.

In granting the motion to dismiss, the District Court relied on McHugh v. Reading Co., 1943, 346 Pa. 266, 30 A.2d 122, 145 A.L.R. 319. There, the decedent, a six year old girl, fell to her death as she descended from a perch atop an ornamental cornice which capped a 24 foot concrete abutment supporting one of defendant's railroad bridges in the City of Philadelphia, and it was contended that the scroll formation lured the children into climbing and that the railroad should have taken steps to safeguard against such an accident. In denying recovery, the Supreme Court of Pennsylvania held that liability to trespassing children was "limited to accidents arising from latent dangers, such as unguarded machinery, live wires, pits or open trap doors" as distinguished from stationary objects. This distinction was based on the condition of liability set forth in § 339(c) of the Restatement that "the children because of their youth * * * do not realize the risk involved." In the comment on this clause the Restatement states that the rule "does not require him (the possessor of land) to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm

resulting from their own immature recklessness in the case of known danger." [4]

In applying this statement of the law to the facts of the McHugh case, Mr. Justice Stern (later Chief Justice) stated (346 Pa. at page 269, 30 A.2d at page 123):

"No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity results almost from animal instinct. Certainly a normal child nearly seven years of age—indeed any child old enough to be allowed at large— knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because, to use the language of the Restatement, of their 'immature recklessness,' but the possessor of land is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type." [5]

The significant aspect of the McHugh case—a fall from a stationary object—is here present. Plaintiffs, however, attempt to distinguish McHugh on the ground that defendant here destroyed all approaches to nearby schools without providing safe alternate routes. The record does not support such an assumption. Accordingly, the McHugh case is dispositive since in the instant case the minor plaintiff should have realized the obvious danger involved in the choice of the retaining wall route.

Plaintiffs have failed in still another aspect of their case under applicable Pennsylvania law. Clause (d) of the Restatement Rule requires that the utility to the possessor in maintaining the con-

---

**3.** Powell v. Ligon, 1939, 334 Pa. 250, 5 A.2d 373; Patterson v. Palley Manufacturing Co., supra.

**4.** Restatement of the Law of Torts, p. 925 (1934 ed.).

**5.** See also Gleason v. Pittsburgh Housing Authority, 1946, 354 Pa. 381, 47 A.2d 129; Roche v. Pennsylvania Railroad Co., 1951, 169 Pa.Super. 48, 82 A.2d 332; Antonas v. Lyford, 3 Cir., 1944, 144 F.2d 763; Malloy v. Pennsylvania Railroad Co., 1956, 387 Pa. 408, 128 A.2d 40.

dition be slight as compared to the risk to young children. In applying this test, the Pennsylvania Supreme Court recently held that it would be unreasonable to require a railroad to fence its right of way in order to bar trespassing children. Dugan v. Pennsylvania R. R. Co., supra [387 Pa. 25, 127 A.2d 347]. The Court stressed the necessity of proving that the danger could be eliminated at moderate cost and effort on the part of the defendant and noted that in all cases of recovery the hazard was confined "to a small fixed location and could have been eliminated with little effort." The following excerpt from the Restatement comment on clause (d) was cited with approval:

"In determining whether a particular condition maintained by a possessor upon land which he knows to be subject to the trespasses of children involves an unreasonable risk to them, comparison of the recognizable risk to the children, with the utility to the possessor of maintaining the condition is of peculiar importance. The public interest in the possessor's free use of his land for his own purpose is of great importance. A particular condition is, therefore, regarded as not involving unreasonable risk to trespassing children unless it involves a grave risk to them which would be obviated without any serious interference with the possessor's legitimate use of his land * * * " [6]

To the same effect is the statement in Prosser on Torts cited in Dugan that: "The public interest in the free use of land is such that, in general, he will not be required to take precautions which are so burdensome or expensive as to be unreasonable in the light of the risk, or to make his premises 'child proof' ".[7]

The record before us reveals that there were numerous bridges, retaining walls and steep embankments within the one mile segment of the Penn-Lincoln Parkway under defendant's control. To require a contractor to fence or otherwise guard all areas of high elevation in this case would be unreasonable and expensive and would seriously impede the construction of highly beneficial public highways in urban areas. Indeed, the courts have reached this result in cases in which the danger has not been as readily apparent to young children as here. Thus, in Powell v. Ligon, 1939, 334 Pa. 250, 256, 5 A.2d 373, 376, it was held that contractors engaged in the excavation of long sewer trenches did not have to erect fences to bar trespassers and "To require them to fence in all such areas or to take other precautions to protect trespassers would involve a prohibitive expense and would unduly impede them in the efficient carrying out of their work."

The Pennsylvania doctrine that the utility to the possessor of maintaining the condition outweighs the possible risk to young children was succinctly stated in the Dugan case, supra, 387 Pa. at page 39, 127 A.2d at page 349 as follows:

"Children and especially those responsible for their parental protection, must be held accountable for their actions where such actions conflict with the dominant public interest in preserving to the possessor the legitimate and necessary use of his land."

For the reasons stated the Order of the District Court will be affirmed.

---

6. 387 Pa. 25, 32–33, 127 A.2d 343, 347.

7. Prosser on Torts, p. 444 (2d ed. 1955).